### STATE *vs.* FRANK W. WILCOX.

The act of 1874 with regard to the sale of intoxicating liquors authorized the county commissioners to grant licenses for such sale in the several towns of the county, such licenses to be granted only on the recommendation of a majority of the selectmen of the respective towns; and provided that any town might, at its annual meeting, determine by ballot whether the selectmen should make any such recommendations for the year ensuing, and forbade the selectmen to make any such recommendations if the town so instructed them; and prohibited the sale of liquors by any person not so licensed. Held to be constitutional and valid.

The act does not delegate legislative power to the towns.

An act delegating legislative power would be unconstitutional.

An act passed in 1872 contained the above provisions, which were re-enacted, with sundry additions, in the act of 1874, the latter act being in addition to and alteration of the act of 1872. The former act provided a penalty for the sale of liquor without a license, which was omitted in the latter act, and a final clause of the act of 1874 repealed all acts and parts of acts inconsistent with it. Held that the provision for a penalty in the act of 1872 was not repealed by the act of 1874.

The act of 1872 provided for licenses to run one year from their date and prohibited the sale by any person "not so licensed." The act of 1874 provided that all licenses granted under it should expire on the 31st of October in each year, with a saving of all licenses theretofore granted which should not have expired on the 31st of the next October. Held that the penalty fixed by the act of 1872 for a sale in violation of its provisions, was applicable to a sale in violation of the provisions of the act of 1874.

GRANDJUROR'S complaint for selling intoxicating liquors

without a license; brought to a justice of the peace, and by appeal of the defendant from the judgment of the justice, to the Superior Court in Litchfield County. In that court the case was tried to the jury, on the plea of not guilty, before *Sanford, J.,* and the defendant found guilty, and a fine of $50 was imposed by the court. He then moved in arrest of judgment on the following grounds:

*First.* Because the act entitled "An Act in addition to an Act concerning Crimes and Punishments" approved August 1st, 1872, and the act entitled "An Act in alteration and addition to an Act entitled 'An Act in addition to an Act concerning Crimes and Punisments,'" approved July 25th, 1874, making unlawful the sale of spirituous liquors in one town, and lawful in another, by the vote of the town, are void and unconstitutional, not being complete and positive in themselves, but depending upon other bodies than the legislature to give them effect, and liable to be repealed by other bodies; thus being contrary to the limitations of legislative power necessarily involved in a representative republican form of government.

*Second.* Because the court has no power or authority under either the statutes of 1872 or of 1874 to impose any fine or other punishment.

This motion being overruled, the defendant brought the record before this court by a motion in error.

The part of the act of 1874 on which the question in the case arises, is as follows:

"The board of county commissioners of each county in this state, shall, at any regular meeting, by an instrument in writing under their hands, license and authorize any suitable person or persons to sell or exchange spirituous and intoxicating liquors, ale and lager beer, in the several towns in said county; *provided* that said license or licenses shall only be given to such person or persons as shall be recommended by a majority of the selectmen of the town where such business is to be carried on, as suitable and fit therefor. *    *    *    * And any town may at its annual town meeting in each year, determine by ballot, by a major vote of the electors present

and voting at said meeting, whether the selectmen of the town shall make any recommendations for the granting of licenses under this act, and the polls for this vote shall be open during the same hours as for the other votes of said meeting. And it shall be lawful for any town to vote, in manner herein otherwise provided, either to issue licenses generally for the sale of all kinds of spirituous liquors, ale, lager beer, etc., or to issue licenses whereby only those liquors enumerated in section four shall be permitted to be sold; and if any town shall instruct the selectmen thereof not to make such recommendations, then the selectmen shall be prohibited from making any recommendations for the granting of licenses."

An act on the same subject passed in the year 1872 contained substantially the same provisions as the above. Both statutes forbade the sale or exchange of intoxicating liquors, ale and lager beer, without a license. The act of 1872 imposed a penalty of $50 for every violation of the act. That of 1874 omitted the penalty, and by a final clause repealed all acts and parts of acts inconsistent with it.

*H. H. Barbour, Jr.,* for the plaintiff in error.

1. The law upon which this prosecution is based is unconstitutional, being in conflict with sec. 1, art. 3d of the constitution of the state, which is as follows: "The legislative power of this State shall be vested in two distinct houses or branches; the one to be styled The Senate; the other The House of Representatives; and both together, the General Assembly." In other words, the people have surrendered, deprived themselves of, all power of enacting laws, and vested it entirely in the General Assembly. *Booth* v. *Town of Woodbury,* 32 Conn., 118; *Opinion of the Judges,* 30 id., 593. The people having divested themselves of this power cannot resume it, and the legislature has no power to delegate it either wholly or in part to them. *Commonwealth* v. *Turner,* 1 Cush., 493; *People* v. *Collins,* 3 Mich., 343; *Cincinnati, &c., R. R. Co.* v. *Commissioners of Clinton County,* 1 Ohio S. R., 77; *State* v. *Copeland,* 3 R. Isl., 33. The main question then is, "did

the General Assembly, in the passage of this act, attempt to delegate any legislative power to the people?" The "local option law," as it is called, exists in several states, and while in no two is the wording precisely the same, the intent is identical in all. The form of the enactment is immaterial. The substance is that the legislature undertake to authorize each town to choose between a prohibitory and a license liquor law; the people are allowed to determine by a vote in some form which they will have. So that the following points can be made upon all of these local option laws: 1st. They are not laws of their own force, but depend for their vitality upon a vote of the people of the various localities. 2d. They are not laws, but propositions to be accepted or rejected by the people. 3d. They do not exist as laws *proprio vigore* as they come from the General Assembly, but are enacted into laws at the ballot box, not being therefore the judgment of the legislature, but that of the people. For these and other reasons the highest courts of many of the states have decided that laws, similar to the Connecticut license act, are unconstitutional. *Rice* v. *Foster*, 4 Harring., 479; *Parker* v. *Commonwealth*, 6 Penn. S. R., 507; *Geebrick* v. *The State*, 5 Iowa, 491; *Maize* v. *The State*, 4 Ind., 342; *Meshmeier* v. *The State*, 11 Ind., 483; *State* v. *Weir*, 33 Iowa, 134; *People* v. *Collins*, 3 Mich., 343; *State* v. *Swisher*, 17 Texas, 441; *Ex-Parte Wall*, (California Supreme Court,) Albany Law Jour., No. 248; *Barto* v. *Himrod*, 4 Seld., 483; *Thorne* v. *Cramer*, 15 Barb., 112; *Bradley* v. *Baxter*, 15 id., 122.

2. The act, if constitutional, provides no penalty for selling liquor without license. The act or amendment of 1874, prohibits all persons from selling, exchanging, offering, exposing, owning or keeping with intent to sell, any liquor, unless they obtain "a license therefor, in the manner hereinafter provided," but no penalty was fixed, and the last section of that act repealed all acts and parts of acts inconsistent with any of its provisions. The court sentenced the accused under section 4th of the act of 1872, which provides a penalty for the sale only, by "persons who shall sell without being so licensed," that is, having a license to sell spirituous and intox-

icating liquors, "to be in force for one year and no more."
In 1874 the law authorizing such licenses was repealed by the
act which authorizes licenses for the sale and exchange of
spirituous and intoxicating liquors, which licenses expire on
the 31st day of October in each year.   Hence if the defendant
was regularly sentenced, every licensed dealer was (until the
revision of the statutes) liable to the same penalty, for none
of them are "so licensed."

   *Huntington,* for the State.
   1.   The acts in question are not opposed to natural right
and justice.   They are acts promotive of the public welfare,
and the question involved is one of policy and not of natural
justice.   *Welch* v. *Wadsworth,* 30 Conn., 149; *Booth* v. *Town
of Woodbury,* 32 id., 118.   These statutes fall within the class
of police regulations which may be intrusted by the legislature
by express enactments to municipal authority.   *Commonwealth*
v. *Bennett,* 108 Mass., 27, and cases there cited; *Common-
wealth* v. *Dean,* 110 id., 354; *State ex rel. Sandford* v. *Court
of Common Pleas,* 36 N. Jer. Law R., 72; *Locke's Appeal,*
72 Penn. S. R., 491.   There is no delegation of the law mak-
ing power given to the towns by these acts; but they are pos-
itive and complete in themselves.   The legislature has by
them pronounced what the law shall be, and it cannot be and
is not abrogated, changed or altered by vote of the towns.
*State ex rel. Sandford* v. *Court of Common Pleas,* supra;
*Locke's Appeal,* supra.   Statutes of similar import have fre-
quently been enacted in this state.
   2.   The court had authority, by the statutes of 1872 and
1874, to impose a fine upon Wilcox for selling spirituous
liquors without a license.   The act of 1874 is in alteration of
and in addition to the act of 1872.   The repealing clause in
the act of 1874 does not repeal the 4th section of the act of
1872.   Nothing in that section is inconsistent with any thing
in the act of 1874.

   FOSTER, J.   That the judgment below was erroneous, is
claimed in the brief of the plaintiff in error on two grounds:

1. That the law is unconstitutional;

2. That, if constitutional, it provides no penalty for its violation.

That the legislature has power to regulate the sale of intoxicating liquors, to appoint boards to grant licenses to sell, and to impose fines and penalties for selling without license, is not denied. The claim is, that the legislature, instead of exercising this power, has delegated it to the people, contrary to the provisions of our constitution, which vests the legislative power in the Senate and House of Representatives.

This question has often been raised in different states of the Union, and has been especially and frequently urged as an objection to laws relating to the sale of intoxicating liquors; "local option laws," as they have sometimes been styled.

While all courts have agreed that legislative power cannot be delegated, there is often great diversity of opinion as to what constitutes such delegation of power. In the case of *The People* v. *Collins*, 3 Mich., 343, a prosecution under a liquor law, the court, made up of eight judges, were unanimous in holding that legislative power could not be delegated, yet four members of the court, in apparently well considered individual opinions, held the law unconstitutional, and therefore void, because it was an exercise of delegated power; while the other four judges, in separate opinions, apparently equally well considered, were of opinion that there had been no delegation of legislative power, and that the law was constitutional and binding.

Among the states which have legislated on this subject, laws have been pronounced unconstitutional by the courts because there was a delegation of legislative power, in the states of Delaware, Pennsylvania, Texas, Indiana, and Iowa. *Rice* v. *Foster*, 4 Harrington, 479; *Parker* v. *The Commonwealth*, 6 Penn. S. R., 507; *State* v. *Swisher*, 17 Texas, 441; *Meshmeier* v. *The State*, 11 Ind., 482; *State* v. *Weir*, 33 Iowa, 134. The case of *Rice* v. *Foster* is the leading case. It was exhaustively argued by distinguished constitutional lawyers, and very fully considered. The law of Delaware, however, was so different from ours, that the case can hardly be con-

sidered applicable as an authority. The same may be said, substantially, of the other cases referred to.

On the other hand, the decisions of the courts in the states of Massachusetts, New Hampshire, and New Jersey, among others, have upheld as constitutional laws passed in those states respectively, similar in character, though differing in detail and sometimes in principle, from those which in the other states have been held invalid. *Commonwealth* v. *Bennett*, 108 Mass., 27; *Commonwealth* v. *Dean*, 110 Mass., 357; *State* v. *Noyes*, 10 Foster, 279; *State ex rel. Sandford* v. *Court of Common Pleas*, 36 N. Jersey Law R., 72.

In this apparent conflict of authorities, though the conflict is at times more apparent than real, as the statutes of the different states differ so widely, it seems proper to examine carefully the provisions of our own statute.

The act of 1872, entitled "An Act in addition to an Act concerning Crimes and Punishments," provides, in the first section, that the board of county commissioners of each county shall, at any regular meeting, by an instrument in writing under their hands, license and authorize any suitable person or persons to sell spirituous and intoxicating liquors, &c., in the several towns in said county; provided that said license or licenses shall be given only to such person or persons as shall be recommended by a majority of the selectmen of the town where such business is to be carried on, as suitable and fit therefor. The same section of the law provides that each person, before receiving a license, shall file with the board a bond to the treasurer of the county, of a specified amount, for the observance of all laws that are or shall be made respecting taverns and spirituous liquors; that said license shall continue in force for one year and no more; and that any town may, at any meeting duly warned and held for that purpose, by a major vote of the electors present, instruct their selectmen not to make any recommendation for the granting of licenses. Further details as to the law are contained in other parts of the act, and the fourth section provides a penalty for any person who shall sell without a license— a fine of not less than fifty, nor more than five hundred dol-

State *v.* Wilcox.

lars, or by imprisonment not exceeding six months, or by such fine and imprisonment both.

We are unable to discover any constitutional objections to this law. There is no legislative power delegated to the people, none to the county commissioners, none to the selectmen. The law is perfect and complete as it comes from the hands of the law-making power. Selling intoxicating liquors without a license is made an offence, universally and positively, and a penalty is provided for transgressors. Licenses may be granted by the county commissioners to suitable persons, if recommended by a majority of the selectmen, and the towns may instruct their selectmen not to recommend any persons. But these are not legislative powers. They are police regulations, quite fit and proper to be exercised by municipalities, county commissioners, or boards of selectmen, for the protection of the morals and health, and the promotion of the prosperity, of their particular localities. Similar powers have been granted in the charters of cities and boroughs for a long course of years, and we are not aware that their constitutionality has ever been questioned.

The case of *Commonwealth* v. *Blackington*, 24 Pick., 352, was an indictment against the defendant for retailing spirituous liquors without a license. The law of Massachusetts, at that time, vested the power of granting licenses in the county commissioners on the recommendation of the selectmen, substantially as in the statute we are now considering. The county commissioners expressed an opinion, generally, that in their judgment the public good did not require that any licenses should be that year granted to retailers; in consequence of which the defendant was deterred from applying for a license, or procuring a recommendation from the selectmen. The defence was put on various grounds, and, among others, the unconstitutionality of the law. Various reasons were assigned why the law was unconstitutional, but the one now urged, that the legislature could not thus delegate the power reposed in them, was not suggested. The defendant's counsel claimed that the commissioners had no power to refuse generally to grant licenses; and to show that they had not

such power, they referred to a law passed by the General Court, after the act charged in the indictment was committed, in which it was provided that nothing contained in the former law should be so construed as to require the county commissioners to grant any licenses when in their opinion the public good did not require any to be granted. This manifestly delegated the same power to the county commissioners as, under our statute, is delegated to the towns. The court sustained the law, but neither court nor counsel alluded at all to the objection now taken, that there was an attempt to delegate legislative powers, and that the law was therefore a nullity.

But it is claimed that this act of 1872, on which we have commented, is repealed by the act of 1874, and that this latter act, besides its unconstitutionality, lacks what is the effective part of every law, a penalty for its violation.

The act of 1874 is entitled "An Act in alteration of and in addition to an Act entitled an Act in addition to an Act concerning Crimes and Punishments."

Now this act of 1874 re-enacts, in terms, that part of the act of 1872 which provides for licensing the sale of intoxicating liquors, a summary of which we have given above. It makes some additional provisions and some alterations in matters of detail. The bonds of persons taking a license expire on the 31st day of October in each year. The towns at the annual town meeting may determine by ballot, by a major vote, whether the selectmen should make any recommendation for the granting of licenses generally, for the sale of all kinds of spirituous liquors, &c., or to issue licenses whereby only ale, lager beer and Rhine wine may be sold. The county commissioners are authorized, under the provisions of this act (of 1874,) and the one to which it is an addition (of 1872,) to grant licenses for the sale of the last named liquors only, upon the payment of a specified fee.

We see no good cause for pronouncing this law unconstitutional. No power is delegated which the constitution requires the legislature to exercise. Indeed the power delegated is not legislative in its character, and so may properly be exercised by the municipalities and local functionaries to whom it

is committed. They have the means of exercising it more intelligently than the legislature itself.

The act of 1874 does not repeal the act of 1872. It is in alteration of and in addition to it. No act is repealed by the act of 1874 except such as are inconsistent with it, and very few of the provisions of the act of 1872 are so. The fourth section, which provides the penalty for selling without license, certainly is not. That remains law. The period of time for which bonds taken are to run is altered, but we regard that as unimportant, for the rights of parties whose bonds run beyond the 31st of October, 1874, under the law of 1872, are expressly saved in the law of 1874.

Numerous authorities of the highest respectability sustain the views and principles which we have here expressed.

In the case of *Commonwealth* v. *Bennett*, 108 Mass., 27, the defendant was prosecuted for violating the liquor law of Massachusetts, and the objection was taken that the law was void because the legislature had delegated the power of passing it. The Massachusetts law, to say the least, was quite as obnoxious to this objection as our law, and the constitution of Massachusetts vests the legislative power in the same manner as it is vested in our constitution. The law was held constitutional.

In a very recent case, *Commonwealth* v. *Dean*, 110 Mass., 357, a prosecution of the same character, the same objection was taken, and the court say that the constitutionality of the law must be regarded as settled.

In the case of *State* v. *Noyes*, 10 Foster, 279, the Supreme Court of New Hampshire sustained very fully the same doctrine.

The case of *State ex rel. Sandford* v. *Court of Common Pleas*, 36 N. Jersey Law R., 72, arose under a statute of that state termed " the Chatham local option law." The provisions of that act were, substantially, that it should be lawful for the persons qualified to vote at the next annual town meeting, to determine by ballot whether thereafter license to sell spirituous liquors should be granted; and that if it should appear that a majority of votes were cast for "no license," it should

not thereafter be lawful to grant any such license until otherwise decided by a contrary vote at some subsequent town meeting.  This law is ours, in principle, and almost in detail, and the Supreme Court of New Jersey held it to be valid and constitutional.

The case of *Locke's Appeal*, 72 Penn. S. R., 491, involved the constitutionality of a law which submitted the question of "license or no license" to sell intoxicating liquors, to be voted upon by one of the wards in the city of Philadelphia, and to be decided by a majority of the votes.  Judge Agnew, speaking for a majority of the court, in a very able and elaborate opinion sustained the law.  The former decisions were examined and some were overruled.  This was in 1873, and it is one of the latest cases on this subject which has fallen under our observation.

We are all satisfied with the decision below, and think there is no error in the judgment complained of.

In this opinion the other judges concurred.