ASHIL E. LONDRY'S APPEAL FROM COUNTY COMMIS-
SIONERS.

First Judicial District, Hartford, March Term, 1906.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Section 2658 of the General Statutes provides that any person whose
   license to sell spirituous and intoxicating liquors shall be revoked
   by the county commissioners may appeal to the Superior Court.
   *Held* that the right of appeal thus given was limited to cases in
   which the question of revocation was brought before, heard and
   decided by, the county commissioners, and did not extend to a
   licensee whose license was forfeited by operation of law upon his
   conviction by a court, as prescribed by § 2677 and chapter 99 of
   the Public Acts of 1903. Upon such conviction the county com-
   missioners are commanded to revoke the license, but are not re-
   quired to hold any hearing, or to call for or receive any objections
   from the licensee, although they may do so if they see fit. If, in
   attempting to follow this mandate, they invade any legal rights of
   the licensee, his remedy is through the well-established methods
   of procedure, and not by means of this special, informal and lim-
   ited process of " appeal." (Two judges dissenting).

Argued March 6th—decided April 17th, 1906.

APPEAL from the action of the County Commissioners of
Hartford County revoking the appellant's liquor license,
taken to the Superior Court in Hartford County where the

cause was erased (*Reed, J.*) from the docket, upon motion of the County Commissioners, and from this order of erasure the appellant appealed. *No error.*

*Benedict M. Holden*, for the appellant (Londry).

*Marcus H. Holcomb*, for the appellees (the County Commissioners).

HAMERSLEY, J. Chapter 60 of the Public Acts of 1881 (p. 30) provided that (§ 1) every person who should sell intoxicating liquor to a minor, etc., should be fined or imprisoned, or both; and (§ 2) that if any licensed person should violate any provision of the laws in relation to intoxicating liquor, such violation should, in addition to the penalty prescribed for the offense, work a forfeiture of his license and of all moneys that might have been paid therefor. The third section of the Act repealed a section in the Revision of 1875 which described in somewhat different language the offense described in § 1.

Chapter 107 of the Public Acts of 1882 (p. 177) is a revision of the law restraining the sale of intoxicating liquor, which repeals and supersedes all former Acts. Part III of this Act deals with the "powers and duties of county commissioners." The powers detailed are: in § 1, to license, upon application as prescribed by law and after notice and hearing had, by a writing signed by them, suitable persons to sell liquor in suitable places; in § 6, upon complaint made of any violation of the provisions of Part VI (which deals with "crimes and penalties"), and upon cause found after due hearing had in the manner prescribed, to revoke any license theretofore granted by them. The other sections of Part III deal with the commissioners' duties. Part IV deals with "licenses and licensees." Section 8 of this Part provides that "whenever any person licensed to sell spirituous and intoxicating liquors shall have been convicted of the violation of any of the provisions of Part six of this act (*de* crimes and penalties), he shall, in addition

to the penalties prescribed for such offense, incur a forfeiture of his license and all moneys that may have been paid therefor, and the county commissioners shall thereupon revoke his said license." The arrangement of this Act is practically followed in subsequent revisions, and § 8 of Part IV of the Act of 1882 appears in substance under the heading of "licenses and licensees" in the Revision of 1888 as § 3075, and in that of 1902 as § 2677. Chapter 99 of the Public Acts of 1903 (p. 67) amends § 2677 by giving to the court in which a licensed person shall be so convicted the power, in case of a first conviction, to adjudge whether the penalty of revocation shall be imposed or not, and if of opinion that it should not, to so certify in writing, which certificate is made a part of the record; and by requiring the justice or clerk of the court, in every case of conviction, to forthwith mail a copy of the judgment to the county treasurer, and requiring the treasurer to notify the county commissioners; the cost of which copy is included in the taxable costs.

We think the revocation, contemplated by this legislation from 1881 to 1903, follows by operation of law the forfeiture of a license imposed as an additional penalty on a person convicted of a specified offense, and that the commissioners before obeying this command to revoke the license, whether by written notice to the licensee or otherwise, are not required to hold any hearing or to call for or receive any objections from the licensee, although they may properly and for their own protection follow that course.      •

In the present case the appellant filed in the Superior Court a document which consists of a certified copy of a paper dated September 11th, 1905, signed by the county commissioners and stating that the treasurer of Hartford county having notified them that a justice of the peace for that county had mailed to said treasurer a copy of a judgment rendered by said justice, showing that at a court held by him A. E. Londry was convicted of a violation of the laws respecting the sale of intoxicating liquors, and said treasurer having filed said copy with them, and said justice not having certified that the license to said Londry should

not be revoked, and said commissioners having notified said
Londry to appear before them, and said Londry having ap-
peared and claimed that said judgment was illegal and void,*
giving no other reason why his license should not be re-
voked, and having admitted that he appeared before said
justice and pleaded guilty to the offense set forth in the
complaint upon which said judgment of conviction was
rendered, and paid the fine and costs imposed by said judg-
ment,—said county commissioners " do hereby revoke the
license by them issued to said Londry."    Immediately fol-
lowing this was a copy of a communication from A. E.
Londry to the board of county commissioners, dated Septem-
ber 14th, 1905, stating that he was aggrieved by the decision
of the board rendered on September 11th, 1905, and " I do
therefore appeal to the Superior Court to be holden at Hart-
ford . . . on the first Tuesday of October, 1905."    A copy
of the bond for prosecution of said appeal followed.

It is manifest that the document so filed is not a process
calling for any exercise of its jurisdiction by the Superior
Court, unless such process is clearly authorized by statute.
The appellant contends that it is so authorized, and that the
document filed is an application to the court and is a process
authorized under the name of "appeal" by § 2658 of the
General Statutes.    Whether or not it is so authorized is the
only question presented by this record, and the only one we
can consider.

Section 2658, in so far as it authorizes the process called
"appeal" for the purposes therein stated, was first enacted
in 1893, and its meaning is substantially the same as the
meaning expressed in that Act.    The peculiar nature of this
process and the limitations of its use have been settled.
*Moynihan's Appeal*, 75 Conn. 358, 360, 365, 53 Atl. 903;

---

° *No ground of illegality appeared in the record.    It was, however, stated
and urged in argument that Londry was charged with having committed the
offense in the town of Burlington, and that the justice upon request of
Londry held his court for the trial of that charge in Hartford; and therefore
the judgment should be held void, notwithstanding the request of Londry,
his voluntary appearance, and plea of guilty.    *Reporter*.

*Burns' Appeal*, 76 Conn. 395, 398, 56 Atl. 611 ; *Hewitt's Appeal*, 76 Conn. 685, 686, 58 Atl. 231.   It is a special and exceptional process for an application to the Superior Court, calling for a summary and informal hearing upon which the Superior Court may, within certain limits, exercise its juris- diction in controlling the results of an illegal exercise of the power of the commissioners of deciding, after investigation involving a hearing before them, whether or not they will issue or revoke a license.   At the time the Act of 1893 was passed, the commissioners had the power, as they have now, upon investigation involving a hearing, to decide whether or not a license should be issued by them, and to decide whether or not a license should for the specified causes be revoked by them.   The inadequacy of any existing process for en- abling the Superior Court to exercise the jurisdiction it might have to restrain the commissioners within the limits of their legal power in making such a decision, was the reason and only justification for authorizing the special, summary and informal proceeding authorized by the Act of 1893 in the cases mentioned.   And so that Act provided that any person aggrieved by a decision of the county com- missioners in refusing to grant him a license, or in revoking a license, might appeal from such decision.   The decision re- ferred to in refusing to grant a license is the one described in § 3063 (Rev. 1888), to "decide whether or not such license shall be granted" after investigation involving a hearing ; and the decision referred to in revoking a license is that required by § 3058 in exercising the power there given them to revoke or not to revoke a license for the causes there mentioned, after a hearing had.   The Act authorizes this special process in these two instances, and in these only.   It does not refer to a forfeiture of license by operation of law and consequent revocation determined by judgment of a court.   It is plain that with the commission- ers, as with other executive officers, obedience to the man- dates of the law may be enforced, and any legal rights aris- ing in connection with obedience or disobedience may be protected, by the established methods of procedure, and that

for such purposes the special informal process authorized in the two specified cases is inappropriate.

When the Act of 1893 was passed, the power of the county commissioners to grant or refuse a license included the power to permit a licensee to change his place of business, or to refuse such permission, and the power to permit a licensee to sell and transfer his license to another, or to refuse such permission ; but the exercise of this power was not limited by any provision for a hearing, and a decision of the commissioners in such a case was not specified in the Act as a decision from which an appeal could be taken ; and when the legislature in 1897 limited their power to permit or refuse a removal of the licensee's place of business by requiring a hearing upon due notice, as required for original applications, it deemed it necessary to specially authorize an appeal from their decision. Public Acts of 1897, p. 854, Chap. 151. And we subsequently held that authority to appeal from the decision of the commissioners, in permitting or refusing to permit the transfer of an unexpired license, could not be inferred from the provisions of the Act of 1893 as originally passed, or as affected by the Act of 1897. *Wakeman's Appeal*, 74 Conn. 313, 50 Atl. 733. The legislative intent in enactments on this subject is not always easily ascertainable. We have examined with care the changing and sometimes apparently contradictory legislation from 1872 to the present time, and have reached the conclusion that the appeal authorized by the Act of 1893 and § 2658 of the Revision of 1902 is limited to the instances therein specified, where the commissioners have exercised a power given them to permit or refuse, after an investigation involving a hearing ; and that authority is not clearly inferable from the language of the section to use this special, exceptional process, either for the enforcement of the mandate like that contained in § 2677 as amended in 1903 (Public Acts of 1903, p. 67, Chap. 99), or for the protection of any legal rights that possibly may arise in connection with obedience or disobedience of that mandate. The remedy for such wrongs, if they arise, is appropriately provided by the

regular established process for invoking the jurisdiction of the Superior Court.

There is no error in the order of the Superior Court erasing the case from the docket.

In this opinion TORRANCE, C. J., and PRENTICE, J., concurred.

BALDWIN, J. (dissenting). The appellant has lost his license because of a void judgment, rendered in a criminal proceeding by a justice of the peace holding court in a different town from that in which it was charged that the offense was committed. To me it seems that the statute, under which he has taken an appeal from the order of the county commissioners, sufficiently indicates the intention of the General Assembly to give this remedy in such a case. He set up a claim of law before the commissioners, which they overruled. I think he could raise the same question for a review of their decision in the Superior Court in this proceeding.

In this opinion HALL, J., concurred.